JOHN J. MULLEN, Respondent, v SIBLEY, LINDSAY & CURR COMPANY et al., Appellants.

Fourth Department, November 16, 1979

**APPEARANCES OF COUNSEL**

*Lines, Wilkens, Osborn & Beck (Thomas C. Burke* of counsel), for appellants.

*Samuel B. Hall (Samuel Brundage* of counsel), for respondent.

**OPINION OF THE COURT**

CARDAMONE, J. P.

During the noon hour on a cold day in February, 1975 plaintiff-respondent, John Mullen, went shopping in the Eastview Mall in Victor, New York, a suburb of Rochester. While in defendant-appellant Sibley, Lindsay & Curr's (Sibley) branch store in the mall, respondent took a $6 tie rack and put it into an empty shopping bag that he had brought into the store with him. Upon leaving he was apprehended by

defendant-appellant Cometa, a security guard employed by Sibley. At that time Mr. Mullen was in the vestibule—a 12-foot space between the interior glass doors leading into the store and the exterior glass doors leading to the parking lot. Respondent was not permitted to pay for the merchandise but, instead, was taken to the security office where he was questioned by Cometa who filled out a "Case History" form. He was then asked to sign a statement admitting that he "unlawfully took" the tie rack "with the intent to take (it) for my own use without making payment therefor". At first respondent refused to sign but later he did sign the form based, he says, on Cometa's assurance that it was only for store records and that he would not be arrested.

Immediately after he executed the form the State Police arrived. He was arrested and taken to the police barracks where he was photographed and fingerprinted. A Victor Town Court jury found Mullen not guilty of the petit larceny charge in April, 1975. As a result of the incident, he entered into a termination agreement in May, 1975 with the Board of Education of the Town of Victor by whom he was employed as District School Principal. Later that month Mr. Mullen and his family moved from Victor.

Subsequently, this action was commenced in Supreme Court, Monroe County, for assault and battery, false imprisonment, false arrest and malicious prosecution. The complaint also sought punitive damages. Defendants-appellants appeal from a Monroe County Supreme Court jury verdict in plaintiff's favor awarding him the amount of $685,000 for compensatory damages and $100,000 for punitive damages.

Section 218 of the General Business Law gives a complete defense to a retail merchant so long as it "had reasonable grounds to believe that the person so detained was committing or attempting to commit larceny on such premises of such merchandise".* The statute continues by defining "reasonable grounds" to include "knowledge that a person has concealed possession of unpurchased merchandise" (General Business Law, § 218). The security guard, Rosemary Cometa, testified that around noon on February 20, 1975 she received a call from a Mr. Gumaer, a security guard for the Eastview Mall, who advised her that he had observed a person (later identified as respondent Mullen) in the mall carrying an

---

* The statute also requires that the detention be for a reasonable time and in a reasonable manner, neither of which, however, is raised as an issue in this case.

empty shopping bag which appeared suspicious to him and that this person was heading toward Sibley's. He suggested that Cometa put the man under surveillance. As a result of this information, Cometa left her office and went out into the store where she spotted Mullen in the men's department at the tie rack counter. She testified she saw him pick up a box containing a tie rack and then look around—a couple of clerks were talking to each other, perhaps 10 feet in front of him—as she watched he turned around and put the tie rack box into his shopping bag. Cometa stated that the box was unopened and that one could not see it after it was placed in the bag. Then, she said, respondent looked at men's underwear and sportswear and stopped at the aisle which goes out into the mall. However, he turned and started toward the interior doors which led outside to the parking lot. She walked past him and went through both the interior and exterior doors of the vestibule and was outside the building when he came into the vestibule. She testified that when she was at the exterior doors preparing to re-enter the vestibule, Mullen was ready to open this outer door but that she held one side of the door closed and came through the other side and said, "Excuse me, I am a security officer and I want to talk to you about the tie rack in your shopping bag"; that he then pulled $20 out of his pocket and said, "Yes, I want to pay for it".

Respondent Mullen did not deny the existence of the tie rack in his shopping bag or that he had failed to pay for it. His explanation was that as he was exiting the store he heard a "clunk" as the bag hit the door and remembered that he had the tie rack. At the trial he testified that after hearing the "clunk" he immediately turned around, reached for the handle of the interior door that had not yet closed. He said that he was facing the interior of the store and was proceeding through the door to go back and pay when Cometa spoke from behind him inquiring whether he had something for which he had not paid. At an examination before trial read into evidence Mullen testified, with respect to the same incident, that he walked through the inside doors into the vestibule where he saw Cometa and she asked him whether he had something in the bag for which he had not paid. He responded by stating "(y)es, and I am about to pay for it" and without further ado he immediately turned around and walked into the store. He conceded at trial that this previous admission that he was detained outside Sibley's in the vestibule and

wanted to go back and pay "after he was caught" was true. He also conceded that he signed a statement admitting guilt after first refusing to do so.

■ The issue presented is whether the verdict may stand in view of the proof. It is axiomatic that in determining whether a verdict is against the weight of the credible evidence a reviewing court "must view the proof most favorable to the verdict" *(Colegrove v City of Corning,* 54 AD2d 1093) and consider the facts adduced at trial in a light most favorable to the plaintiff who is entitled to the benefit of every favorable inference that can reasonably be drawn from the facts *(Martin v City of Albany,* 42 NY2d 13, 18). The resolution of conflicting evidence and the credibility of witnesses is for the jury to determine *(Boyle v Gretch,* 57 AD2d 1047, 1048). This court cannot set aside a verdict because it would have reached a different conclusion than the jury. Interference by us is warranted only when the findings of the jury could not have been reached on any fair interpretation of the evidence *(McWilliams v Ratliff,* 51 AD2d 655; *Mintz v Festa,* 29 AD2d 689, affd 23 NY2d 750; 7 Weinstein-Korn-Miller, NY Civ Prac, par 5501.21).

■ Considering first respondent Mullen's claim for malicious prosecution, the elements needed to state this cause of action are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice *(Martin v City of Albany,* 42 NY2d 13, 16; *Broughton v State of New York,* 37 NY2d 451, 457). Probable cause is defined as that knowledge of facts, actual or apparent, strong enough to justify a reasonable person in the belief that he or she has lawful grounds for prosecuting the defendant in the manner complained of *(Burt v Smith,* 181 NY 1, 5). Whether the defendant in an action for malicious prosecution has probable cause for instituting legal proceedings against the plaintiff is to be determined with reference to what the defendant knew or could have known at the time and does not depend on the actual state of facts, but upon the honest and reasonable belief of the party commencing the prosecution (36 NY Jur, Malicious Prosecution, §§ 30, 31, pp 295-297).

■ Turning to plaintiff's claims for false arrest and false imprisonment, we consider appellant's statutory defense. Under section 218 of the General Business Law, where a plaintiff

in a civil suit proves a false arrest or unlawful detention, the defendant has the burden of establishing that it had reasonable grounds or probable cause for believing the person detained or arrested was committing or attempting to commit larceny on the store premises. Reasonable grounds or probable cause does not depend upon the guilt or innocence of the accused or upon whether a crime has been committed. The merchant may act upon what appears to be true even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify that such belief is reasonable *(Jacques v Sears, Roebuck & Co.,* 30 NY2d 466, 474; *Boose v City of Rochester,* 71 AD2d 59). Thus, it may be seen that, although the burdens of proving "probable cause" to initiate prosecution in the malicious prosecution cause of action and "reasonable grounds" to detain under section 218 of the General Business Law in the false arrest and false imprisonment causes of action are on different parties, they have the same meaning and effect. In brief, a defendant who has "probable cause" to detain or who subjects a plaintiff to a "reasonable detention" has a complete defense to a cause of action for false arrest or imprisonment and has precluded the plaintiff, who has the burden of establishing want of probable cause, from recovering on a cause of action for malicious prosecution.

Viewing the facts in a light most favorable to plaintiff Mullen and to sustain the jury's verdict with respect to these three causes of action, it is incontestable from Mullen's own testimony at trial (not considering the more damaging admissions he conceded at the trial that he made during his examination before trial) that he was exiting the store with concealed, unpurchased merchandise belonging to Sibley's when detained by its security guard. Under these circumstances appellant Cometa unquestionably had reasonable grounds to detain respondent whom, it is undisputed, she had had under surveillance for 15 minutes. In our view this uncontested proof is fatal to the causes of action for false arrest and false imprisonment because appellants had "reasonable grounds" to detain respondent and under such circumstances the statute provides them with a complete defense (General Business Law, § 218; *Jacques v Sears, Roebuck & Co., supra,* at p 473). Similarly, the same proof fails to demonstrate a want of probable cause "such as would persuade a man of ordinary care and prudence to believe in the truth of the charge" *(Burt*

*v Smith,* 181 NY 1, 5-6, *supra).* Such is fatal to respondent's cause of action for malicious prosecution.

The action for assault and battery also may not be sustained since no evidence was presented that Mullen suffered any damage when Cometa took him by his arm. We conclude, therefore, that the jury's verdict is *not* supported as a matter of law by any fair interpretation of the evidence.

The undisputed facts in the record fail to establish necessary elements in each of respondent's four causes of action— and these actions must, therefore, be dismissed (CPLR 4404, subd [a]; *Blum v Fresh Grown Preserve Corp.,* 292 NY 241; Siegel, New York Practice, § 406).

The judgment should be reversed and the complaint dismissed.

SIMONS, J. P., DOERR, WITMER and MOULE, JJ., concur.

Judgment and order unanimously reversed, on the law and facts, without costs and complaint dismissed.